THE H. G. JOHNSON.

BRAKER et al. v. THE H. G. JOHNSON.

(District Court, S. D. New York. November 12, 1891.)

1. COMMON CARRIER—DAMAGE FROM OTHER GOODS—VESSEL'S RISK—BONA FIDE PUR-
  CHASER.
    A common carrier vessel under the usual bill of lading takes the risk of damage
    to goods through contact with other goods, when not caused by peril of the sea, as
    respects a *bona fide* purchaser, though the goods are shipped by the charterer.

2. SAME—LEAKAGE OF OIL.
    On delivery of plumbago in barrels shipped under the usual bill of lading, a part
    were found damaged by cocoa-nut oil, stowed above the plumbago. In other re-
    spects the cargo was well stowed. There was no shifting, the usual dunnage, and
    no extraordinary perils on the voyage. The damage arose either from unfit oil
    casks, or improper stowage of such casks over the plumbago. *Held*, that the ship
    took the risk and was liable for damage.

In Admiralty. Libel by H. T. Braker and others against the H. G.
Johnson to recover for injuries to freight.

*George A. Black*, for libelants.

*Owen, Gray & Sturges*, for claimants.

BROWN, J. In November, 1890, Delmege, Reid & Co., being char-
terers of the British bark H. G. Johnson, shipped on board of her at
Colombo 2,145 barrels of plumbago, which they had previously sold to
the libelants, for which a bill of lading was signed by the master, reciting
the receipt of the goods "in good order and well conditioned," and agree-
ing to deliver the same in like good order at New York, to the order of
Winter & Smilie, agents, "the act of God, the queen's enemies, fire, and
perils of the seas" excepted. Winter & Smilie were the agents of the
libelants. On the delivery of the plumbago at New York, 466 of the
barrels were found damaged by cocoa-nut oil, a part of which had been
stowed above the plumbago. The libel was filed to recover this damage.
The evidence leaves no doubt that the damage arose from the leakage of
the oil. Aside from the placing of oil casks over the plumbago, the cargo
was in general well stowed. There was no shifting of cargo on the voy-
age. There was the usual dunnage, and the ship encountered no ex-
traordinary perils. The claimants' witnesses ascribed the leakage to the
poor quality of the casks in which the cocoa-nut oil was shipped, the
casks proving to have been not well-seasoned, but green, and subject to
shrinkage during the warm weather of the passage. The oil, as well as
the plumbago, was shipped by Delmege, Reid & Co., but the master
superintended the stowage and arrangement of the cargo. The bills of
lading in this case import the ordinary contract and liability of a com-
mon carrier. They contain no exceptions save those above stated. In
the case of *Liverpool & G. W. Steam Co.* v. *Phenix Ins. Co.*, 129 U. S.
397, 437, 9 Sup. Ct. Rep. 469, Mr. Justice GRAY, in delivering the
opinion of the court, says:

"By the settled law, in the absence of some valid agreement to the contrary, the owner of a general ship carrying goods for hire, whether employed in internal, in coasting, or in foreign, commerce, is a common carrier, with the liability of an insurer against all losses, except only such two irresistible causes as the act of God and public enemies."

These bills of lading are to the same effect. There is nothing in them that serves to protect the ship from liability for damage arising from other goods. This damage did not happen from any peril of the seas, as the master himself testifies. The damage is directly traceable either to unfit oil casks, or to improper stowing of such casks over the plumbago, or to the lack of suitable attention to the leakage through the deck and in the hold during the voyage. Upon such bills of lading, and in the absence of any other exceptions, the ship takes the risk of such accidents as respects *bona fide* purchasers and consignees of the goods to whom she issues bills of lading, even though the goods were shipped by the charterers. *The T. A. Goddard*, 12 Fed. Rep. 174; *The Antoinetta C.*, 5 Ben. 564. The libelants are in the situation of *bona fide* purchasers, paying for the goods on the faith of the bills of lading issued to their agents, Winter & Smilie. Decree for the libelants, with costs.